## Merrill v. Penn Pocahontas Coal Company

*Lloyd R. Persun*, for plaintiffs.
*James F. Beener*, for defendants.

COFFROTH, *P.J.*, August 6, 1984—These consolidated actions of mortgage foreclosure are here on plaintiffs' motion for summary judgment. The issue is whether certain tangible personal property of the mortgagor is as a matter of law covered by the mortgage. The tangible personal property in dispute consists of a tandem truck, several pickup trucks and several personnel (passenger) vehicles.[1]

Clause 1 of Schedule I of the mortgage covers "all the real estate and rights and interest in real estate" of the mortgagor consisting of certain listed tracts of land. The habendum clause of the mortgage covers ". . . the properties described on Schedule I, real, personal and mixed, together with all and singular the appurtenances thereunto belonging." Clause 2 of Schedule I of the mortgage further provides as follows:

### "CLAUSE 2"

"Together with all and singular the tenements, hereditaments, easements, appendages and appurtenances thereunto belonging, and the rents, issues and profits thereof which are hereby expressly assigned, and all buildings, engines, boilers, pumps, including all improvements, additions and extensions appurtenant to any real or fixed property now

---

1. The vehicles in dispute are identified on page 5 of defense counsel's filed brief as the following numbered items on Exhibit A of the motion for summary judgment: 57, 60-61, 67 through 70, 74, 76 through 79, 83 through 89, 92-93, and 95 through 115.

or hereafter subject to the lien of the mortgage which are used or useful in connection with the business of the company.

"All property of the company of the character described in the next preceeding paragraph, has been or is or will be owned or acquired with the intention of using the same in carrying on the business of the company, and it is hereby declared that it is the intention of the company that all thereof shall be subject to the lien of the mortgage.

"It is agreed by the company that so far as may be permitted by law, all tangible personal property of the company shall be deemed to be and construed as fixtures and appurtenances to the real property of the company."

The business of defendant-mortgagor is mining, processing, transporting and selling coal. Erected on the mortgaged property is a plant for the mining and processing of coal for sale.

Plaintiffs' contention is that the personalty in question is covered by the mortgage under Pennsylvania's industrial plant mortgage doctrine. Defendants agree that the case is governed by the doctrine but contend that the personalty in question does not come within that doctrine, whose applicability depends upon the particular use to which the personalty in question is put and that " . . . the plaintiffs' stated facts concerning the uses to which the various pieces of equipment are placed[put] are not entirely accurate and overstate the connection of the various pieces of equipment to the operations of defendants". If there is some material fact which is not clearly resolved on the record, the case must go to trial and we cannot grant summary judgment. In order to determine whether such a dispute of fact exists here, we must first determine what the industrial plant mortgage doctrine is; here we notice

some difference between the parties in the way they define it.

Plaintiffs say that the tangible personalty of the mortgagor which is covered by the mortgage under the industrial plant mortgage doctrine consists of that which is *"used and useful in connection with the business"* of the debtor (Emphasis added); that language comes from Clause 2 of Schedule I of the mortgage quoted above. Consistent therewith, plaintiffs' interrogatory No. 1 reads in relevant part as follows:

"1. Identify and describe in the manner hereinafter provided all tangible personal property of the defendant, owned and acquired after June 29, 1971 [mortgage dated June 30, 1971] and *used or useful in connection with its business of mining, producing or selling coal.*" Emphasis added.

Defense counsel contends that the doctrine applies only to tangible personalty which is " . . . related to the actual production of coal . . ." by the mortgagor, not merely that which is "used or useful in connection with its business of mining, producing or selling coal." We are in substantial agreement with the defense on this point, on the basis of the following propositions:

1. The industrial plant mortgage doctrine is accurately described in the following statements:

Summary of Pennsylvania Jurisprudence, Mortgages §304:

§304.—Machinery and similar equipment in industrial buildings."

"Where machinery and equipment forms an intregal part of the industrial plant, substantially the same rules are applicable as apply to stoves, heaters, etc., in a dwelling.

"If such machinery and equipment was installed in a factory or other industrial building with the in-

tent, gathered from all the surrounding circumstances, that it become an intregal part of the plant, it will become part thereof and constitute part of the realty, notwithstanding it is susceptible of removal without damage to the physical structure of the building." First National Bank of Mt. Carmel v. Rechneder, 371 Pa. 463, 469, 91 A.2d 277 (1952):

"Thus it will be seen that by overwhelming authority over the course of more than a century the principle that all the essential parts of an industrial plant are to be regarded as real estate,—that the machinery and equipment indispensible to the functioning of such a plant are deemed fixtures passing to a mortgagee of the realty even though not specifically mentioned in the descriptive clause of the mortgage,—is firmly established in the law of this Commonwealth."

Thus, the doctrine is simply a rule of fixture law. See: PLE, Fixtures §2; Garman v. Conemaugh Township School District et al, 29 D.&C.3d 478 (1984). Its purpose is to protect investment in industrial plants and thereby advance the economic interests of this industrial state. See: McClure v. Atlantic Rock Company, Inc., 339 Pa. 296, 301, 14 A.2d 124 (1940), appeal from this court; Garman, supra, 353; PLE, Mortgages §84.[2]

Although in some judicial opinions there is language seemingly applying the doctrine beyond the industrial plant building to the mortgagor's "business" generally, careful reading of their context

2. Compare the assembled industrial plant doctrine in eminent domain law. See: Singer v. Oil City Redevelopment Authority, 437 Pa. 55, 261 A.2d 594 (197); Commonwealth v. F&A Selzer et al, 18 Pa. Commw. 127, 334 A.2d 834 (1975). Compare also related provisions of the law governing the taxation of real property as discussed in School District of Falls Township Appeal, 31 D.&C.2d 109 (1962).

demonstrates that the courts are equating "business" with the manufacturing and processing of the product in the plant itself and not with other aspects of the mortgagor's business in transporting and selling the product or in the administrative aspect of the business. This is made clear in Reichneder supra where the court held that the mortgage covered "the machinery, equipment and chattels contained in and about the brewery" (371 Pa. at 465), that is, " . . . the machinery and equipment indispensable to the functioning of such a plant," (*Id,* 469), " '. . . the personal property, such as machinery which is necessary to carry on the *business of the plant . . .' " (Id, 467;* Emphasis added). The court there further held that the mortgage did not cover other personalty incidental or even essential to the general "business" of the mortgagor, such as office equipment and trucks used for delivery of product to customers, the court saying (470-1):

"It will be noted from the quotations hereinbefore made from the various cases referred to, that the machinery, equipment and chattels which pass under an industrial mortgage are those only which form essential parts of the plant for the purpose of manufacturing the product there made; in other words, such a mortgage does not include in its coverage everything used in *the operation of the business,* however important for that purpose, but only such articles as are contained in or about the premises and are essential to the *manufacture of the product.*" Emphasis in original.

That principal is applied in Equipment Finance Inc. v. Pennsylvania Bank & Trust Co., 56 D.&C.2d 238 (1972), in which the court held that a log skidder used to move and load logs and to make logging paths in connection with the mortgagor's sawmill operation but having no part in the internal oper-

ations of the sawmill in turning out the cut, trimmed and sized lumber from raw logs, was not a trade fixture subject to the mortgage under the industrial plant mortgage doctrine. The principle was also applied in R. J. Carey Co. Inc. v. First National Bank of Dushore, 66 D.&C.2d 583 (1974) where the court denied a motion for summary judgment on the ground that it was not clear that the boiler in suit was essential to the manufacture of the products to which the plant was devoted, the court saying (585-6):

". . . a crucial inquiry in this case concerns whether the boiler is *essential* to the manufacture of the products of Dolly Madison Industries Inc. Mere use in the operation of the business of the user is insufficient: [citing Reichneder supra]." Emphasis in original.

Compare School District of Falls Township Appeal, supra, allowing tax exemption of articles used only "directly" in manufacturing.

2. The industrial plant mortgage doctrine applies to coal mining and processing plants. See: McClure v. Atlantic Rock Co. Inc., supra; Titus v. Poland Coal Co., 275 Pa. 431, 436-7, 119 Atl. 540 (1923).

3. Although the doctrine originally depended on proof that the parties intended to cover the plant machinery and equipment, the doctrine is now crystalized as a rule of law without the need for such proof, either in the circumstances or in the form of language in the contract documents; it need only be shown that the mortgaged property is in fact an industrial plant. See Reichneder, supra, 469; Garman, supra, 353; Equipment Finance Inc. v. Pennsylvania Bank & Trust Co., supra, 244; PLE, Fixtures supra.

It has not been contended that the language of the mortgage above-quoted goes beyond the indus-

trial plant mortgage doctrine by embracing any personal property used or useful in the mortgagor's business generally. Although a real property mortgage doing so may be valid as between the parties, see PLE Mortgages §11, the language of this mortgage cannot be so interpreted; as the parties recognize, the language "used or useful in connection with the business" of the mortgagor is limited to appurtenances to "real or fixed property" and by the subsequent language of Clause 2 of the mortgage that the intent is to cover personal property "so far as may be permitted by law," that is, by the industrial plant mortgage doctrine.

Although it is conceded that the personalty in question is used and useful in the business generally of the mortgagor, it is neither conceded nor clear that the personalty is a permanent part of the coal mining and processing *plant,* rather than merely incidental thereto and part of some other aspect of the mortgagor's business. Hence, we cannot grant summary judgment.

## ORDER

Now, August 6, 1984, plaintiffs' motion for summary judgment is denied.